UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-14012-CR-ROSENBERG/MAYNARD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

LEONARD CARTER, a/k/a "Pee Wee",

    Defendant.
_____/

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE [DE 15]

Defendant Leonard Carter is charged by indictment with being a felon in possession of a firearm in violation of 18 U.S.C. § 922 (g)(1). DE 1. This matter is before the Court upon Defendant's Motion to Suppress. DE 15. The Defendant argues that the firearm and other evidence should be suppressed because it was illegally seized. Defendant's Motion to Suppress was referred to the undersigned. DE 16. The government filed a response and this Court held an evidentiary hearing on July 13, 2020. DE 25; DE 27. At the hearing, the Court heard testimony from two government witnesses: Highlands County Sheriff's Office ("HCSO") Lieutenant Alfredrick Tyson and Deputy Benjamin Toney. No defense witnesses testified. After considering the pleadings, evidence and relevant case law, this Court recommends that the Defendant's Motion be **DENIED** for the reasons set forth below.

### FINDINGS OF FACT

The Court granted Defendant's request for an evidentiary hearing to determine the facts and applicable legal standard. Based on the evidence presented at the hearing, the Court makes the following findings of fact material to the Motion to Suppress.

On December 2, 2019, Lt. Tyson received a tip from a confidential informant that Leonard Carter had displayed a handgun at Willie Hawk's Grocery in Avon Park, Florida. DE 27 at 12. The informant is a known law enforcement source who has given Lt. Tyson reliable information regarding homicides, shootings, and robberies for several years. *Id*. at 13. The informant said he[1] saw Carter flash a big, silver firearm to individuals in the area and that the handgun "was [now] tucked inside [Carter's] waist band on the left side of his body." *Id*. at 16. The informant described Carter as wearing a black hoodie jacket, black sweat pants, and black rubber boots. *Id*. at 14. The informant stated that Carter was leaving Willie Hawk's Grocery and was headed to the corner of Hal McRae Boulevard and South Delaney Avenue. *Id*. Lt. Tyson relayed the information to Dep. Toney and Det. Trey Marley, who were patrolling Avon Park. DE 21 at 2; DE 27 at 16. Lt. Tyson and Dep. Toney were familiar with the corner mentioned by the informant, which "is a well-known area for open air market drug sales and crimes of violence." *Id*. at 17.

While in route to Hal McRae Boulevard, Dep. Toney checked his database to confirm that Carter was a convicted felon. DE 27 at 53. Dep. Toney was previously aware that Carter was a felon from prior law enforcement meetings about criminal activity in the community. *Id*. at 51-52. Dep. Toney and Det. Marley arrived on scene before Lt. Tyson. They found Carter near the intersection indicated by the informant. Carter was wearing a black hooded sweatshirt, black sweatpants and black boots just as the informant stated. *Id*. at 21, 58. As they approached, Dep. Toney noticed a bulge in Carter's waistband that resembled a weapon. *Id*. at 57. The officers began speaking to Carter. They asked for consent to search him, but Carter refused. *Id*. at 57-58.

---

[1] Although the Court uses the pronoun "he" to refer to the informant throughout this Report, that is for ease of reference only. The informant's gender is unknown as the identity remains confidential.

Lt. Tyson arrived a few minutes later. As he approached, Det. Marley indicated towards Carter's waistband, where Tyson observed a visible bulge. *Id*. at 19, 43-44, 47-48. Lt. Tyson told his officers to search and detain Carter for officer safety. *Id*. at 11, 19-20. The officers did so and found a firearm in Carter's waistband on the left side of his body. DE 15 at 1. They also found a small zippered pouch in his front pants pocket containing eight .45 caliber bullets and a small amount of marijuana. *Id*. at 1-2. Carter stated that the handgun was for protection and had no magazine in it (which the officers confirmed). *Id*. Post *Miranda* rights, Carter stated that he knew he was a convicted felon and was wrong for carrying the handgun. *Id*.

## DISCUSSION

The Fourth Amendment gives individuals the right to be secure in their persons against unreasonable searches and seizures. U.S. Const. amend. IV, § 1. In order to show that one's Fourth Amendment rights have been violated, "the complainant need prove only that the search or seizure was illegal and that it violated his reasonable expectation of privacy[.]" *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). "Evidence obtained in violation of the Fourth Amendment must be suppressed." *U.S. v. Jordan,* 635 F.3d 1181, 1185 (11th Cir. 2011).

Under the Fourth Amendment, searches without a warrant are considered unreasonable with limited exceptions. One of those exceptions is known as a "*Terry* stop". *Terry v. Ohio*, 392 U.S. 1, 30 (1968). In *Terry v. Ohio*, the Supreme Court held that a police officer may conduct a brief investigatory stop when the officer has a reasonable suspicion that a suspect was involved in, or about to commit, criminal activity. *Id*. at 19-20. If the officer has "a reasonable, articulable suspicion that criminal activity is afoot," then the officer does not violate the Fourth Amendment in conducting a brief, investigatory stop. *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). An

officer who has reason to believe he is dealing with a person who is presently armed and dangerous may also conduct a reasonable search for weapons for his own safety and the safety of others. *Terry*, 392 U.S. at 27. Law enforcement may conduct a *Terry* pat down search for weapons on a suspect's person if reasonable suspicion exists to do so. *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993).

Reasonable suspicion is a less demanding standard than probable cause, but the Fourth Amendment still requires "at least a minimal level of objective justification for making the stop." *Id.*; *Jordan*, 631 F.3d at 1186. Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or hunch[.]" *Terry*, 392 U.S. at 27 (internal quotations omitted). The officer must "be able to point to specific and articulable facts which, taken together with rational inferences from those facts," justify a brief investigatory seizure. *United States v. Williams*, 238 F. App'x 566, 567 (11th Cir. 2007) (internal quotations omitted). The totality of the circumstances and collective knowledge of the officers will determine if the officers acted with reasonable suspicion. *U.S. v. Acosta,* 363 F.3d 1141, 1145 (11th Cir. 2004). Whether reasonable suspicion existed at the time of an investigatory stop is a question of law to be decided by a court. *Hicks v. Moore*, 422 F.3d 1246, 1252 (11th Cir. 2005).

The government contends that when the officers stopped and searched Mr. Carter, they had a reasonable suspicion that he was committing the offense of being a felon in possession of a firearm. They had a tip from a confidential informant who had provided accurate information to law enforcement several times in the past. They found Mr. Carter where the informant said he would be and dressed as the informant said he was dressed. They observed a visible bulge on his body in the exact place the informant said the gun was located. And they knew Carter was a

convicted felon when they approached him. In Mr. Carter's view, however, the informant and the tip were not sufficiently reliable to cause reasonable suspicion.

When examining whether an informant's tip was reliable enough to give rise to an officer's reasonable suspicion, a court considers the totality of the circumstances, including the informant's reliability, veracity and basis of knowledge, and the reliability of the tip itself. *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996) (internal citations omitted) (considering informant's reliability, veracity and basis of knowledge); *United States v. Brown*, 636 Fed. Appx. 514, 517-18 (11th Cir. 2016) (considering reliability of informant and the nature of the tip itself). A tip from a "known informant" supports reasonable suspicion because the informant's "reputation can be assessed" and she "can be held responsible if her allegations turn out to be fabricated." *Florida v. J.L.*, 529 U.S. 266, 270 (2000). The lower an informant's reliability, the more reliable the tip itself must be, and vice versa. *Brown*, 636 Fed. Appx at 518 (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)).

First, the undersigned evaluates the reliability of the informant. A tip from a known informant that has provided information in the past is a "stronger case" than an anonymous tip for developing reasonable suspicion. *Adams v. Williams*, 407 U.S. 143, 146 (1972). Here, the tip was provided by an informant whose identity was known to Lt. Tyson and whose reliability and veracity had been tested for many years. According to Lt. Tyson, the informant has actively provided information to law enforcement about criminal activity at least sixteen times in the past five to seven years. DE 27 at 13-14, 32-40. The informant's tips have led to drug seizures, arrests of wanted subjects and information related to homicides, shootings and robberies. *Id*. at 13. The informant's previous tips were actual, factual and truthful. *Id*. at 13, 32-34. Lt. Tyson was not

aware of the informant ever giving false information to law enforcement. *Id*. Thus, the information law enforcement received in this case did not come from "an anonymous, faceless tipster," *United States v. Vanderlinde*, 140 F. Supp.3d 1283, 1288 (S.D. Ala. 2015), but from someone the Highlands County Sheriff's Office had worked with for years. That the tip came from such a known informant may be sufficient by itself to justify the investigatory stop in this case.

Defendant's efforts to dispute this considerable showing of reliability are unavailing. He challenges the informant's reliability because Lt. Tyson could not specify exactly how far back the informant had been providing information, other than to say that it was between five and ten years.[2] He challenges the informant's reliability because the informant has been paid thousands of dollars over the past several years to provide information to the police.[3] He complains that the informant's name remains undisclosed and Lt. Tyson did not reveal specific details about prior cases in which the informant provided information to police.[4]

---

[2] On direct examination, Lt. Tyson testified that the informant had been providing information to him for the past four to six years. DE 27 at 13. On cross examination, he clarified that the source had provided information actively for five to seven years but may have provided information to Lt. Tyson as far back as ten years. *Id*. at 33-34; 40.

[3] Lt. Tyson testified that HCSO typically pays between $50 and $300 per tip depending on the severity of the criminal activity at issue. He also testified that the informant involved in this case has been paid some amount in cash on at least 16 occasions over the last several years.

[4] At the evidentiary hearing, Defendant asked this Court to require Lt. Tyson to reveal the identity of the confidential informant. DE 27 at 26-28. This Court declined to do so. Although the government's privilege to withhold the identity of a confidential informant is limited, *Roviaro v. United States,* 353 U.S. 53, 60-61 (1957), disclosure of an informant's identity is ordinarily not required where – as here – the informant is merely a tipster and not an active participant in the criminal activity. *See United States v. Young*, 161 F. App'x 922, 927 (11th Cir. 2006); *United States v. Mendoza*, 433 F.2d 891, 894 (5th Cir. 1970). It is not necessary to know the informant's name or identity to inquire into his history, veracity, and reliability in providing information to law enforcement. Moreover, an informant's identity need not be disclosed solely to attack the validity of a search warrant, *Mendoza*, 433 F.2d at 894, or to determine whether reasonable suspicion existed at the time of a *Terry* stop, *United States v. Cartwright*, 183 F. Supp.3d

The Court, having heard Lt. Tyson's testimony and observed his demeanor at the evidentiary hearing, finds his testimony credible and rejects the Defendant's arguments. Lt. Tyson might not have known the exact number of years he had been receiving information from the informant, but he was clear that it was at least four or five years and up to a decade, which is a significant amount of time to evaluate an informant's credibility. Lt. Tyson also credibly testified that all the information this informant had provided to law enforcement was factual, accurate and true. To Tyson's knowledge, the informant had never provided false information. This is credible evidence from which this Court concludes that it was reasonable for law enforcement to believe the informant.

Having found the informant credible and reliable, the Court next considers the nature of the tip itself. When a *Terry* stop is based on a third-party's tip, the Court must evaluate whether the tip itself bore sufficient indicia of reliability to support reasonable suspicion. *White*, 496 U.S. at 330-31. Here, a number of factors render the tip at issue reliable. First, the tip contained an eyewitness account of the crime. The informant reported that he personally witnessed Mr. Carter display a firearm at a local grocery store. DE 27 at 16. "The courts have traditionally viewed information drawn from an ordinary witness … with considerably less skepticism than information derived from anonymous sources." *United States v. Martinelli*, 454 F.3d 1300, 1307 (11th Cir. 2006). An informant who sees a crime in progress has a basis of knowledge that "lends significant support to the tip's reliability." *Navarette v. California*, 572 U.S. 393, 399 (2014). Second, the

---

1348, 1360 (M.D. Ga. 2016). The Court also notes that Defendant did not raise this issue in his Motion to Suppress or provide any legal support for his position.

informant accurately described Mr. Carter's location, attire, and where the firearm was located on his person. When police encountered Mr. Carter, he was located at the corner of Hal McRae Boulevard; he was wearing a black sweatshirt, black sweat pants and black rubber boots; and there was a visible bulge on the left side of his waistband, just as the informant reported. DE 27 at 14-15, 19, 21. Third, the informant's statement was corroborated when officers approached Mr. Carter and saw the visible bulge on his left side. *See Jordan,* 635 F.3d at 1187 (finding that "a visible, suspicious bulge on an individual may give rise to reasonable suspicion, particularly when the individual is present in a high-crime area") (internal quotations omitted);[5] *United States v. Hunter*, 291 F.3d 1302, 1306 (finding that "the presence of a visible, suspicious bulge on an individual may be considered in the totality of circumstances"). Indeed, even without the tip, the presence of a suspicious bulge alone can form the basis of reasonable suspicion. *U.S. v. Elsoffer,* 671 F.2d 1294, 1297 (11th Cir. 1982) (finding that a bulge of unusual size and shape observed on the defendant's body "provided a specific and articulable basis justifying the seizure.").

This Court agrees with Defendant that the tip was not predictive of future criminal behavior as the Supreme Court required in *Florida v. J.L.*, 529 U.S. 266, 271 (2000). However, *J.L.* does not stand for the proposition that information provided to police must predict future criminal behavior in order to give rise to reasonable suspicion. "Prediction is but one indicator of reliability." *Brown*, 636 Fed. Appx at 519. In *J.L.*, the Supreme Court held that an <u>anonymous</u> "bare" report that a young black man in a plaid shirt at a particular bus stop was carrying a gun was not reliable in part because the tip failed to predict any future criminal conduct. *Id.* at 271. In

---

[5] At the hearing, the officers testified that the area where they found Mr. Carter is a "high crime area." DE 27 at 18, 55.

contrast, the tip in this case was far from anonymous; the tip here was provided by someone with a previously proven track record of giving accurate information to law enforcement for several years. Further, in *J.L.*, law enforcement had no specific evidence that the conduct at issue was criminal. Here, the officers knew Mr. Carter was a felon before they arrived at the scene. As a result, when they encountered Carter, the officers had a reasonable, articulable basis for suspecting that he was a convicted felon in possession of a firearm. Thus *J.L.* and other cases involving anonymous tips are not directly applicable here. The officers in this case had more than a hunch that Mr. Carter was engaged in criminal activity. They knew he was a convicted felon and had information from a reliable source that he possessed a firearm. Given the tip, Mr. Carter's criminal history, and their visible observations, police had reasonable suspicion based on the totality of the circumstances to believe that criminal activity was afoot. That reasonable suspicion rendered it permissible for officers to conduct a *Terry* stop. They also were permitted to conduct a limited search of Mr. Carter's person for officer safety because there was reason to believe he was armed and dangerous. *U.S. v. Gibson*, 64 F.3d 617, 623-624 (11th Cir. 1995) (law enforcement permitted to conduct a reasonable search for weapons during an investigatory stop where an anonymous tip described potentially armed individuals).

**ACCORDINGLY**, this Court recommends to the District Court that Defendant's Motion to Suppress Illegally Obtained Evidence [DE 15] is due to be **DENIED**.

The parties shall have fourteen (14) days from the date of this Report and Recommendation within which to file objections, if any, with the Honorable Robin L. Rosenberg, the United States District Judge assigned to this case.

**DONE AND SUBMITTED** in Chambers at Fort Pierce, Florida, this 24th day of August, 2020.

_____
SHANIEK M. MAYNARD
UNITED STATES MAGISTRATE JUDGE